Case number 14-7092, Albert J. Adams Appellant v. District of Columbia. Mr. Fuchs for the Appellant, Ms. Johnson for the Appellate. Good morning, Your Honor. James Fuchs for the Appellant. In the 1920s, Italo Svargo wrote a novel about a Trieste businessman called The Confessions of Zeno. In that novel, the businessman wrote his memoirs at the behest of his psychiatrist. In writing those memoirs, whenever there was an inconvenient memory or detail, he simply changed the memory or the detail so that the past would come out in accordance with the way he thought that it should have come out. That, Your Honors, is precisely what the Appellee has done here. For five years, there was no question that the Appellant, Albert J. Adams, was a qualified individual with a disability. The Appellee's own EEO, director, talked to Mr. Adams, talked to his physician, talked to his supervisor, and believes that he looked at Mr. Adams' position description. Based upon all that, he decided that Mr. Adams was, in fact, a qualified individual with a disability. Moreover, he wrote... That's really a legal opinion, right? I'm sorry, it's not a legal opinion? That's really a legal opinion, as opposed to, for example, the detailed factual statements in the application for Social Security. Well, the statements in Social Security were written by individuals who were not lawyers, so those were certainly not... But they were purely factual. Those statements in Social Security... You've got to say they're related to facts. Well, yes, followed after the denial of reasonable accommodation. And according to the decision in Cleveland v. Policy Management, an appellant, an applicant, is actually allowed to make statements that reflect the reality of his situation after he's denied reasonable accommodation. But he's not allowed to contradict fact statements. If you say, just for example, if you say, Social Security, that you cannot walk, you cannot later come in here and say you can walk. You can certainly say, Social Security, I am disabled, and then come in here and say I can walk. But a specific factual claim, you can't contradict, can you? No, there was no factual claim that he could not work if provided with reasonable accommodation. There was no mechanism for that in the Social Security application. What about the statement, he has to lie down all the time? At his home, he could lie down. He was able to work at his computer, and he was able to... But the statement says, has to lie down all the time. Well, nobody lies down all the time. It was probably a misstatement that was made. But the fact is, his doctor examined him beforehand and determined that wasn't the case. And of course, Your Honors, he was writing that only in the reality of a situation in which he wouldn't be at any job in which he wouldn't be lying down. I'm sorry, how is that? I don't understand that. I'm sorry, I didn't clarify. The reason that he had to report that he was lying down was that he was not able to work in an office setting. But the fact is, he could be resting while doing computer work, and his right hand was completely unimpaired. His right arm was also unimpaired. As a consequence of that, everything that he reported, to the best of his knowledge, was truthful. But it was from the perspective of having been denied reasonable accommodation from the very outset. That application, as Your Honors know from having read the briefs, came one day after his final counseling interview. His final counseling interview had been on September 13, 2006, in which he had been told that the reasonable accommodation of telework was simply not available. And based upon having been told that the reasonable accommodation of telework was not available, he filed for Social Security and wrote his application based upon that understanding. And since he wrote his application... I mean, undoubtedly, the context was there, but he does make very clear, unequivocal statements in the application of propositions of fact. He makes statements based upon the denial of reasonable accommodation. They are based on that, but they're still factual statements. They are factual statements in a particular context. He cannot stand or walk more than 10 minutes, which sounds hard to reconcile with his own description of what the job required, which had him, I think, seven out of eight hours moving around and so forth. Well, much of what the job required, Your Honor, involved getting up and looking at the computer system, checking the legacy system, making certain that everything was correct, writing reports, dealing with vendors, answering to a help desk, and all of those things, actually, he could be doing lying down, or at least in a position in which he'd be very comfortable. Well, what about the statement, describe this job, what did you do all day? Answer, teach classes on computer software and hardware, travel to various locations to train persons on computer software and hardware, worked on computer database. You've only been referring to the last clause, worked on computer database. But what about traveling to various locations to train persons on computer software? And what about teaching classes on computer software? Your Honor, when he wrote— You agree those are statements of fact? Those are statements of fact, and he was, in fact, doing a great deal of training prior to the time of the stroke. As he testified in his deposition, the requirement of the training had ceased. Now, the question on the application is, what had he been doing up until that point? And so he was, in fact, truthfully reflecting what he had been doing up until that point. Since he wasn't a lawyer, he wasn't preparing for litigation and realizing that making that statement, even though it was truthful, and of course he had to make truthful statements anyway, would impede his prospects for getting what he needed to get, when, in fact, that was never an issue in the first place. Your Honor, as I see, I am into my rebuttal time, but I'm happy to continue as long as I won't relinquish that rebuttal time. Well, let me just ask if any of the judges have further questions. So why don't you save your time for rebuttal. Thank you, Your Honor. Your Honor. Good morning. May it please the Court. Holly Johnson for the District of Columbia. Mr. Adams is bound by the facts he swore to in his Social Security application. To survive summary judgment, he now has to explain how, assuming the truth of those statements, a reasonable fact finder could find that he was still, nevertheless, capable of performing his essential functions if he was given a reasonable accommodation. Mr. Adams has made no attempt to explain how this is possible. He simply ignores the duties he swore he was required to do in his Social Security application. The only explanation he has given comes in this argument is where he states that this requirement that he do in-person training which he said he was doing a lot of for the first few years of his job had ceased before he had his stroke. And he testified in his deposition that for about five months he hadn't been doing any training. And I would point this Court directly to the deaths case, the Third Circuit deaths case cited in our brief. And the facts there are, in all important respects, identical. There, the employee, who also was not a lawyer and who was applying for Social Security benefits, had already been transferred from his heavy-duty job to his light-duty job before the circumstances arose where he needed to seek disability benefits. But he only listed, in response to that question, what do you do all day, and in response to the question, how many hours per day do you spend doing these different physical activities, he only listed the heavy-duty work. And the Seventh Circuit said that he was bound by what he said in his application about his duties, that he could not, and this is what Butler says, it says a person who applied for disability benefits must live with the factual representations made to obtain them. And if those show an inability to do the job, then an ADA claim may be rejected without further inquiry. The purpose of listing the job, or describing the job, is to demonstrate why the disability would prevent you from performing those functions. Is that right? Yes. The implication for what do you do all day is so that you can establish that your disability prevents you from doing that. And what Cleveland said is there are circumstances where you could be disabled for purposes of Social Security benefits because that doesn't consider an accommodation, and not disabled under the ADA. But you need to explain how you can harmonize the disparity of fact. And here there's been no effort has been made to harmonize that. This is a complete bar to Mr. Adams' ADA claim. It does not matter what the district knew at the time. It doesn't matter what the district said to him at the time. It does not matter what the district would have done had it had its information. Well, it does matter whether this is an essential element of his job. Just the fact that he did it doesn't make it an essential element, right? I think that that's true. However, I will note that in debts, what he did all day was deemed to be essential even though he actually, as a matter of fact, was not doing those things. Do you have other evidence that this was an essential element of his job? Oh, yes, there is other evidence as well. Namely the job description. The job description says, and I think that probably the cleanest, there's a few different facts, like different duties. I think the cleanest one and the clearest one to look at is the training requirement. The position description describes training as a major duty. And Mr. Adams, in fact, testified that he was hired to train employees and that he did it a lot all the way up until 2005. And he also testified that he could not conduct this training from home. And that's at Joint Appendix 435 to 36 and 438 to 39. He could not do it at home. He had done it a lot. It's certainly reasonable. I don't think any fact finder could assume that someone whose job it is to train employees on new software would never have to do it again. What's the explanation for why he wasn't doing any training for five months prior to his stroke? I will say that from his testimony it's a little bit muddled, but my understanding from his testimony is that when they first started the STAR and NOVAD database systems, they had to train all the employees in the agency to catch up, or all the employees that used that to catch up with that system. And that once that training had been established, the training center took over for new employees coming in. But there is evidence in the record that STAR and NOVAD were being phased out, that there was a whole new database system coming in. And, frankly, it's common sense. If you work in information technology, that you're constantly going to have to be keeping up with new technology and training employees on new databases. Beyond that, Mr. Adams is stopped from claiming that he's no longer required to do training under the analysis in debts. He said in his Social Security application, in response to the question, what do you do all day, that he teaches classes, which he admitted he had to do out of the home, and that he traveled to different locations to teach classes. This was one of two duties he put in his application. It's listed in his position description as a major duty. And there's no reason to believe that duty would not come up again. But that's not the only duty that he had to perform that was an essential function. He also had to manage the help desk. And he had to be able to do this over the telephone. He testified that in order to do his job, he had to be able to communicate effectively over the telephone. And he had admitted in his Social Security application and in deposition that his speech was slurred. And, in fact, so slurred, he said in his deposition, that for two years after his stroke, people had a lot of trouble understanding him. And what about after the two years? After the two years, it improved. But that's not a relevant time frame for purposes of this question. The question of whether someone was able to perform their essential functions is at the time of the denial of the accommodation. So the question is essentially at the time that he submitted his Social Security application could he perform those functions. And there is no evidence that he could perform the essential functions of his position at that time. Finally, I will note that his help desk duties also required him to travel. He admitted that he was traveling on site once a week to help people out with their computer problems. Now, he testified at deposition that this was just voluntary, that this wasn't actually required. But his Social Security application notes that most of the day was spent stooping, kneeling, crouching, crawling, and handling equipment. He was doing more than just talking to people in his duties when he went on site. So he can't claim that he didn't have to go there. I will also point this court to Butler, which is the other case where someone said in an application for disability benefits that what they had been doing was not actually required of the job. And in that case, the court said, the Seventh Circuit said, that you can't claim that because you're unable to do something you're entitled to disability benefits and then turn around and claim in a different lawsuit that you're qualified for your job because those duties were not actually required. In short, Mr. Adams focuses very much on the period of time in which the district did not have the information it had during this litigation. In this litigation, the district finally uncovered and was able to obtain the Social Security application. And in this litigation, the district was able to depose Mr. Adams and obtain his admissions about what he did all day and what his functions were. All that matters is whether this... Well, presumably the district knew what his functions were and what he did all day. That's not information solely in the control of the plaintiff. Not solely in control of the plaintiff. But it is somewhat of an unusual situation here because we did not have a supervisor available to say what he did all day. Well, that's the district's problem. No, Your Honor, it's not. Mr. Adams has the burden of proof and the district had the position description, which is evidence. It did not have a... Mr. Adams brought the lawsuit. He was deposed five, six years after his stroke. You're saying the District of Columbia had no idea. I'm not saying that this is unlikely. But are you saying the District of Columbia has no idea what its employees do all day? Not at all. Not at all. I'm not saying we have no idea what its employees do. I'm not saying this is a general proposition. But they had no idea what this employee was doing. And I'm not saying no idea because Mr. Adams had a position description. What I'm saying is he had a stroke, he went out on medical leave, and two months later a new supervisor came in who had never seen Mr. Adams on the job. And by the time the litigation came around, his earlier supervisor was not available. There is evidence as to what he did. When you say not available, what do you mean by that? You tried to subpoena him and he refused to show up? I have no idea what the details are. So then you don't know he's not available. All you know is he wasn't employed by the district anymore, right? Yes, that's what I know personally. I could speak to the trial counsel and know about this. Normally in civil litigation you're allowed to make inquiries of people outside. You're not saying the person refused to talk to you. You just don't know at all. I'm saying I don't know. You're absolutely correct. I would not want to suggest that he was unavailable in the legal sense. What I'm saying is this. Mr. Adams has the burden of proving that he was capable of performing his essential functions. He testified as to what his essential functions were. We presented a position description as to what his essential functions were, and he presented a Social Security application listing duties which other courts always find to be relevant to the essential functions. If that's what you're doing all day, if seven out of eight hours of the day you're performing physical activity and physical labor, no reasonable jury could find that those are not essential functions. So given the fact that it is his burden of proving that he was qualified, what matters now is whether on de novo review of the evidence before this court today Mr. Adams has established that. And because he could not travel, his speech was slurred, and it's wholly speculative as to whether he could handle the cognitive difficulties of his job, the district is entitled to summary judgment. Thank you. Thank you. How much time is left? Two minutes. You have two minutes. Although the district claims that Mr. Adams has made an about-face, the district makes absolutely no apologies for its about-face throughout this case, which is, of course, why we are here. There was no question of the fact that there was no reason to deny Mr. Adams reasonable accommodation except for the district's policy that there was no telecommunication policy in place. That was the only reason. And contrary to what Ms. Johnson has suggested, it's not as if the district was without legal counsel. The district was with able legal counsel throughout the entire time. Nor is it true that a supervisor was not available. A supervisor was available. In fact, I deposed the supervisor who took over, and he said that it didn't trouble him that he didn't know what Mr. Adams was doing. He came up with a plan for Mr. Adams after litigation occurred, but he was certainly available. And, in fact, he was available at the time that the district was meeting. I think she was talking about the supervisor before that supervisor. Is that right? I think so, but the fact is there was a supervisor who was available during the time period and who was deposed. And so I think it's important. I think there is a possible misunderstanding, and it's important to clarify that. And he was the supervisor that the EDO counselor talked to, in addition to having talked to the physician. So information was at the district's disposal. Whether the district chose to deal with that information, I will also say that the death case is completely an opposite in that it involved light duty. A computer technician's job is not a physical manual job. It's not something that requires a lot of heavy lifting. It's true that he did mention that the computer was the heaviest thing he had to deal with, but he didn't have to lift the computer. Most computer technicians don't have a lot of heavy physical labor. So to characterize this job is simply as false as the premise on which the district is operating from the outset. Further questions from the bench? Thank you. We'll take the matter under submission. Thank you.
judges: Garland, Williams, Randolph